Price, J.
We have set ont at length in our statement of the case the important allegations of the petition filed in the court of common pleas — the allegations necessary to be considered here, because all material questions raised before and during the trial seem to turn on their sufficiency to constitute a cause of action. If the petition is good, there was evidence introduced tending to support its averments, and if this is true, the plaintiff in error should not complain of the charge of the court, for it instructed the jury to some extent as the railway company requested, and in other respects, we think the charge contains nothing to its prejudice. The grounds of the judgment of reversal by the circuit court, as shown by the judgment entry, are — (1) The said court of common pleas erred in overruling the demurrer to the petition of the plaintiff when said demurrer should have been sustained. (2) The court of common pleas erred in overruling the motion of the defendant below to direct a verdict for the defendant at the close of plaintiff’s evidence. (3) That there was error in the charge of the court *149 to the jury. The court further found that no other errors appear in the record.
The railroad of the defendant company crosses the tracks and road bed of the Pittsburg, Cincinnati, Chicago & St. Louis Railway at grade a few miles west of the city of Columbus. The latter road had been in existence and operation many years, and. on the twenty-fourth day of July, 1893, the defendant being desirous of building its road across the road and tracks of the other company entered into negotiations with the latter, which resulted in. the execution of a written contract, under the terms of which the defendant obtained the right to so eross, without resorting to an appropriation under .the statute. The provisions of said contract which are. now material are the following: “This agreement, made this twenty-fourth day of July, 1893, between the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, as first party, and The Toledo- & Ohio Central Railway Company as second- party, witnesseth: that the first party for and .in- consideration of the sum of one dollar ($1.00) to it paid, receipt whereof is hereby acknowledged, and in further consideration of the covenants and agreements of the second party herein contained, has granted, and by these presents, does grant to the second 'party the right to construct, maintain and operate a single or double track over and across the right of way and track of the first party where the road of the second party is surveyed and located at or near mile post No. 6, about one mile west of Mound Station, etc. * * *.
. “The first party shall have the right at any and all times hereafter to lay down, maintain and,operate over the track or tracks of the second -party, *150 herein authorized to be laid down; and when it shall so elect to lay down any such track, or tracks, the second party will, upon notice of such election, provide the materials for and properly construct all the crossings with such additional track or tracks according to the plans or specifications which the first party may prescribe, etc.
“The second party agrees that it will furnish the materials for and construct and put in all crossing-frogs and other fixtures necessary to make the crossing with the existing track of the first party at the place aforesaid, strictly in accordance with such plans and specifications as shall be prescribed by the chief engineer of the first party.
“ The second party agrees, immediately upon the execution of this agreement, to erect and thereafter maintain and operate at its own expense, at the place of said crossing an interlocking system which shall be satisfactory to the signal engineer of the first party, and under the operation of which trains of either party may be permitted, under the laws of the state, to pass over said crossing without coming to a stop, and shall extend said interlocking system so as to cover any future tracks which either party may construct over the tracks of the other party at said crossing, and shall also maintain and operate said system when so extended.
“The second party further agrees that it will, at its own expense, employ competent watchmen to guard the crossing during the entire period said interlocking system is in process of construction.
*151 ' “In the passage of the respective trains of the parties hereto over said crossing, trains of the first party, both passenger and freight, approaching the crossing in either direction, shall have precedence over the trains of the other party. In testimony, etc.
“The Pittsburg, Cincinnati, Chicago & St. Louis Railway Company,
'“By James McCrea, Vice President. “Attest: S. B. Ligget, Secretary.
“The Toledo & Ohio Central Railway Company,
“By Stevenson Burke, President. “Attest: L. D. Kelley, Secretary.”
Under the terms of this contract the parties thereto proceeded, and the defendant company performed its part of the obligations, furnished the necessary materials and made the crossing, including all crossing-frogs in a manner apparently satisfactory to the other company, and likewise at its own expense, erected and thereafter maintained and operated at the place of crossing a satisfactory interlocking system, under the operation of which trains of either party were permitted to pass over without coming to a stop. As a part of this interlocking system, a tower was erected in which levers were established by which certain rails of each road were manipulated and from- which tower various signals on each road were controlled as the approach of trains on either road required.
It is not in dispute that the defendant company, in pursuance of the terms of the above contract, furnished the entire’ system, including the tower house, and employed the tower man or operators *152 in the tower, one for the day season and another for the night season. Nor is it disputed that the defendant company paid these men for their services, and had full and entire control over them, subject to the right of inspection of the signals and the signal appliances, and perhaps, also, the right of inspection of other parts of the interlocking-system.
The contract was not unreasonable, but it constituted an amicable arrangement whereby the new road could cross the old one at a common grade without resort to appropriation by law, and it is a legal contract, in that it is permitted by the statute-section 247e, Revised' Statutes. A part of the section reads: “In case where the tracks of two or more railroads, or the tracks of a railroad and an electric railroad, cross each other at common grade in this state, any company owning any one of such tracks, whose managers may desire to unite with others in protecting such crossing with interlocking or other safety devices, and shall be unable to agree with-such others on the matter, may file with said commissioner (of railroads) a petition stating the facts of the situation and asking said commissioner to order such crossing to he protected by interlocking- or other safety devices * *
. The section provides for notice and a hearing on the petition, the making and recording of an order prescribing the kind of device to he used and the proportion of the cost of constructing of such plant and the expense of maintaining and operating the same, which each of the companies shall pay.
We think it was competent for the two companies, parties to the contract before us, to agree upon what might he compelled by the commissioner of *153 railroads under the above section, and having agreed upon the terms and mode of crossing, they were also competent to. agree that the new road —defendant company — should bear all the expense of putting in the crossing and employ and pay the necessary servants or agents to operate the interlocking system. The contract is therefore legal and binding as between the contracting parties, however it may or may not affect the public in general.
It is no answer to this proposition to say, as has been said by counsel for' the defendant company, that neither the statute nor common law allows either of the companies to shift to the other its responsibility for its negligence; that each is still liable to the public for its negligence causing an injury. This may be true. But we are not called upon to decide that question in this case. But we are quite confident that as between the parties to the contract involved, it was competent for them to' agree that the new road, seeking the crossing, of the older at common grade, should furnish the interlocking system — employ and pay its servants to operate the same for the benefit and convenience of both. Such is the purport of the written agreement, and it has been so understood and acted upon by both parties, at least up to the time of the injuries sustained by the plaintiff below.
It is presented in argument for the defendant company, that it should be presumed that the other company, — (The Pittsburg, Cincinnati, Chicago & St. Louis) on an estimate of its share of the costs of the construction and maintenance of the interlocking system, gave the Toledo & Ohio Central Railway Company the right to cross at grade in consideration, in part at least, that the latter company, at its own *154 cost and expense, would install the interlocking system and always maintain it, and if that is so, then the older company, in effect, is still paying a share of the expense of the crossing, including the tower man.
It is attempted to establish by the above course of reasoning, the premises for the legal claim that the tower man was in the joint employment of the two companies; — that he was acting for both, and at the time of the injuries he was handling the device for the Pittsburg, Cincinnati, Chicago & St. Louis Company. Then the further claim follows on such premises, that the injured fireman of the latter company was a fellow servant of the tower man and therefore cannot recover of either company.
But there is no foundation for any alleged presumption, or any such assumed premises, and hence the legal deductions therefrom must fall.
As to the expense of putting in and keeping up the crossing and the maintenance of the interlocking system, the two companies committed their negotiations agreed upon to writing. Bearing upon this subject the contract reads: “That the first party for and in consideration of the sum of one dollar to it paid * * * an(i in further consideration of the covenants and agreements of the second party herein contained, has granted and by these presents does grant to the second party the right to construct, maintain and operate a single or double track over and across the right of way and track of the first party *
One of the covenants mentioned in the contract is that “the second party agrees immediately upon the execution of this agreement, to erect, and thereafter maintain and operate at its own expense, at the place *155 of said crossing, an interlocking system, which shall be satisfactory to the signal engineer of the first party * *
The theory of joint employment so- adroitly advanced must be excluded because of the clear terms of the contract. This view disposes of the entire second defense set up in the amended answer. It is there set out that the plaintiff below, — the injured fireman on the freight train which was derailed by the negligent act of the tower man — was a member of “The Voluntary Relief Department” of the Pennsylvania Company, at the time he was injured, and that he accepted the benefits of membership in the way of considerable sums of money in aid of his recovery, upon the condition stipulated in the terms of membership, that he thereby relinquished all claims for damages against The Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and therefore has no right of action against The Toledo & Ohio Central Railway Company.
The only way to make that defense available here, is to assume that the tower man was in the joint employment of the two companies, and that if the fireman was injured by the negligence of the tower man, the two companies were joint tort feasors, and accepting payments or benefits from and thereby releasing from damages one tort feasor — The Pitts-burg, Cincinnati, Chicago & St. Louis Railway Company, he released the other tort feasor, The Toledo & Ohio Central Company. Having found there was no joint employment, the whole theory of the second defense fails.
The' defendant company relies on Railway Company v. Schneider, 45 Ohio St., 678, which it claims *156 rules the present case, and it has .been said by counsel that it influenced the judgment of the circuit court.
We therefore examine'the facts of that case. The action in the common pleas was against The Cleveland, Columbus, Cincinnati & Indianapolis Railway Company for causing the death of the husband of the administratrix, plaintiff in the action, at Freeman street, Cincinnati. The questions which are said to be similar to those before us now, arose out of the charge of the trial court, and its refusal to charge as requested by the defendant. The defendant obtained from The Cincinnati, Hamilton & Dayton Railway Company the right to use the tracks of the latter company under the seventh section of a contract executed by the two companies, which is: “ The business of the said two lines of railroad shall be conducted so as to preserve the existing relations of each with eastern and western connecting roads, and to develop to the fullest extent'the business resources of each line; all passenger trains shall be run from the Cincinnati depot, party of the first part, and for the use of the same, with the tracks, side tracks thereto, and yards for passenger ears west of Millcreek, and for the cost of switching, the. party of the first part shall be allowed and paid by the party of the second part, in excess of the amount to which each shall be entitled out of the joint earnings, annually, the sum of five thousand dollars, payable monthly.” No other part of the contract appeared in the record of the case. The court found, as appears on page 692 of the opinion : “ That there was evidence tending to show that the gate at the Freeman street crossing was put up by the former company, (Cincinnati, Hamilton & Dayton) and that the gateman was employed by that *157 company, bnt tbe engines and trains of tbe latter company were rnn and controlled by its own servants and employes, and that the engine which collided with the wagon of the deceased when he was killed, was so run and controlled; and as the negligence charged against the defendant by the plaintiff in her petition consisted in carelessly running the locomotive and managing the crossing, it became a material question whether the defendant could be made responsible for any negligence of the gateman while it was using and operating the railroad. The whole of the agreement between the two companies is not produced, and it was impossible for the court from the fragment that was introduced in evidence to construe it, or properly determine its effect on the relation really existing between the companies. From that part of the contract contained in the record, it appears that each company had the right to the equal and joint use of the tracks and depot, and the defendant was to pay the other company for the use of the same, with the side tracks and yard, and for the cost of switching, five thousand dollars per year in excess of the amount to which it should be entitled out of the joint earnings. What the arrangement was in regard to the servants or employes of the two companies is not shown. Whether they were to be paid out of the joint earnings, and be under the joint control of the two companies, or otherwise, does not appear from that part of the agreement in the record, and the .evidence on the subject consisted of the usage and conduct of the companies.”
The court then approved of the charge of the trial court, leaving it to the jury to determine as a question of fact, whether the defendant in that case was using the tracks of the other company under an *158 agreement with, it, and whether the gatekeeper and other employes of that company were, by reason of the agreement, aiding to run the locomotive of the defendant which caused the injury. And the court further added:' “The fact that the gateman was an employe of the Cincinnati, Hamilton & Dayton Railroad Company, and was under its control, and so operated the gates while the defendant’s trains were passing, does not exclude the idea that by virtue of the agreement between the two companies, he may also have been equally under the control of the defendant.”
We have quoted thus freely from the above case to show that it did not involve the question we have here, and it seems that the opinion was carefully worded to exclude it. There is nothing in the decision that tends to a condemnation of agreements like the one before us. It must also be remembered, that that was a case between the offending company and a third party — a member of the general public, while we are considering whether the contract is good between the companies executing it so as to be respected and relied upon by the employes of each.
That case is so unlike this in all important respects, that it does not rule our judgment.
The defendant cites also B. & O. Ry. Co. v. Walker, 45 Ohio St., 577, and its learned counsel say our exact question was passed on in that case. We cannot concur in that conclusion. The answer of the defendant company in that case set- up an agreement with the suing company, the terms of which placed the responsibility for the crossing expenses on the plaintiff. The reply took issue on the answer. The answer being affirmative in character and challenged by reply, the burden was upon the defendant company *159 to establish the contract alleged. On page 584, in the opinion, it is stated, that no evidence of the agreement was offered, and the case was submitted on the pleadings, the answer availing nothing. As there said by the court: “Practically, therefore, the case was submitted to the court as upon default or demurrer to the petition. ’ ’
Indeed, all reasonable inferences to be drawn from the doctrine of that case are against the defendant in error in the case at bar. We have not space to answer in detail other authorities cited for the defendant in error. Our conclusions are fully supported by many cases cited in the brief for plaintiff in error.
We have no doubt the petition states a good cause of action and a demurrer thereto was properly overruled. The trial court was right in refusing to direct a verdict for defendant at the close of the plaintiff’s evidence.
The evidence tends to prove that as the freight train of The Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, on which Hydell was fireman, was approaching the crossing from the west, the tower man displayed signals indicating that the crossing was clear for it to pass over, and they remained so until the engine was about two hundred feet from the crossing, when, through bewilderment or from some other cause, he threw the derail so that the engine and several cars went from the track into the ditch and the fireman was severely injured.
There was evidence introduced tending to prove all the material allegations of the petition.
There are some inconsistencies of statement in the charge of the court, but they were not detrimental to the cause of the defendant, and whatever else of *160 error that appears in the charge was invited by its counsel.

The judgment of the circuit court is reversed and' that of the common pleas affirmed.

Shauck, C. J., Spear and Davis, JJ., concur.
Summers, J., not sitting.